IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENDURANCE AMERICAN § | | |
| SPECIALTY INSURANCE CO., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-09-2307 |
| § | | |
| BROWN, MICLETTE & BRITT, INC., § | | |
| *et al.*, § | | |
| Defendants. § | | |

**MEMORANDUM AND ORDER**

This insurance case is before the Court on the Motion for Summary Judgment ("BMB's Motion") [Doc. # 24] filed by Defendant Bowen, Miclette & Britt, Inc. ("BMB"), and the Motion for Summary Judgment ("Endurance's Motion") [Doc. # 28] filed by Plaintiff Endurance American Specialty Insurance Company ("Endurance"). Also pending is Defendant Robert Winter's separate Motion for Partial Summary Judgment [Doc. # 31], in which he primarily adopts BMB's Motion. Both Defendants seek a declaration that Plaintiff owes them a duty to defend in certain underlying lawsuits against them. Plaintiff seeks a declaration that it owes no duty to defend. The Motions have been fully briefed.[1] Based on the Court's review of the

---

[1]   Endurance filed a Response [Doc. # 28]; BMB filed a Reply [Doc. # 32]; Endurance filed a Sur-Reply [Doc. # 35]; and BMB filed a subsequent Reply [Doc. # 37].

record and the application of governing legal authorities, the Court concludes that Endurance owes BMB and Winter a duty to defend. Consequently, the Court **denies** Endurance's Motion, **grants** BMB's Motion, and **grants** Winter's Motion.

## I.    BACKGROUND

BMB and Winter are defendants in three lawsuits filed by victims of the alleged Stanford Financial Ponzi scheme. The first lawsuit, *Samuel Troice, et al., v. Willis of Colorado, Inc., et al.*, was filed in the United States District Court for the Northern District of Texas by citizens of Mexico (the "*Troice* Lawsuit"). The second lawsuit, *Manuel Canabal, et al., v. Willis of Colorado, Inc., et al.*, was filed in the same court by citizens of Venezuela (the "*Canabal* Lawsuit"). The third lawsuit, *Barry Rupert, et al., v. Robert S. Winter, et al.*, was filed in the District Court of Bexar County, Texas, by citizens of the United States and other countries (the "*Rupert* Lawsuit"). The plaintiffs in the three underlying lawsuits allege that they purchased Certificates of Deposit ("CDs") or deposited money into other accounts with Stanford International Bank ("SIB"). The plaintiffs assert that the CDs constitute securities for purposes of their claims that Defendants violated securities laws.

BMB filed a claim for coverage under Endurance Professional Liability Insurance Policy No. PPL 10001201900 ("the Policy"). Endurance denied coverage, arguing that the lawsuits are not based on "Professional Services" as required for

coverage under the Policy. Endurance denied coverage based also on the "Securities Exclusion" in the Policy because the three lawsuits are based on securities violations excluded from coverage.

The parties filed cross-motions for summary judgment and have fully briefed the issues. The Motions are now ripe for decision as to Endurance's duty to defend in the three lawsuits.[2]

## II. DUTY TO DEFEND

### A. Applicable Legal Principles

An insurer owes its insured a duty to defend "if a plaintiff's factual allegations potentially support a covered claim." *Zurich Amer. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex. 2006)). In deciding whether an insurer has a duty to defend, the Court must follow the "eight-corners rule" that provides that the duty to defend is determined based only on the plaintiff's pleadings in the underlying lawsuit. *Id.* at 491. The focus is on the factual allegations in the underlying complaint, not on the legal theories. *See id.* at 495 (citing *Farmers Tex. County Mut.*

---

[2] Under Texas law, indemnity issues are justiciable only after a claim for coverage has been asserted against the insurer and the underlying lawsuit has been concluded by final judgment. *See Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004). As a result, the indemnity issue is not currently justiciable.

*Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)). The Court is required to "resolve all doubts regarding the duty to defend in favor of the duty" and to "construe the pleadings liberally." *Id.* at 491. "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Id.*

If the complaint in the underlying lawsuit clearly alleges only facts that would exclude coverage under the insurance policy, there is no duty to defend. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)). If, however, it is unclear from the complaint in the underlying lawsuit whether the factual allegations fall within the policy's coverage, the "insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *See Zurich*, 268 S.W.3d at 491; *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008).

B.   **"Professional Services"**

The Policy covers claims against BMB for "Wrongful Acts," which are defined under the Policy as "any actual or alleged act, error or omission committed or attempted solely in the performance of or failure to perform 'Professional Services' by an Insured." *See* Policy, Exh. 1 to BMB's Motion, p. 7 (¶ FF). "Professional Services" are defined in the Policy to include "services as an insurance agent,

insurance broker, [or] insurance consultant." *See id.*, p. 6 (¶ X). The "Professional Services" definition specifically includes "risk management [and] loss control consulting." *Id.*

The factual allegations in the three underlying lawsuits relate primarily to the alleged Ponzi scheme for which Allen Stanford and other Stanford Financial employees have been indicted. Of relevance to this insurance coverage dispute, Plaintiffs allege that BMB rendered "professional services to Stanford Financial over the years as insurance agents, brokers, risk managers and/or insurance consultants." *See Troice* Complaint, Exh. 2 to BMB's Motion, ¶ 40; *see also Canabal* Complaint, Exh. 3 to BMB's Motion, ¶ 35 ("BMB, as part of their professional services as insurance agents, brokers, risk managers and/or insurance consultants, . . ."); *Rupert* Complaint, Exh. 4 to BMB's Motion, ¶ 88 (BMB served as "insurance brokers and risk management advisors," "placed coverage for SIB [Stanford International Bank] and consulted for SIB on risk management strategy"). Plaintiffs allege that, in connection with providing these insurance and risk management services, BMB provided SIB with certain letters, referred to in the complaints as "safety and security letters" or "safety and soundness letters" ("Letters"). Plaintiffs allege that BMB stated in the Letters that "SIB is insured by various Lloyd's insurance policies" and state incorrectly that SIB had "qualified" for the Lloyd's policies by passing "stringent Risk

Management Review conducted by an outside audit firm." Plaintiffs allege further that the BMB Letters imply that the insurance coverage provided safety for all deposits and investments in SIB. These allegations in the three underlying lawsuits establish that the claims against BMB are based on services provided that fall within the definition of "Professional Services" for purposes of coverage under the Policy.

## C. Securities Exclusion

The Policy includes an exclusion for any claim "based upon or arising out of any violation or alleged violation" of federal or state securities laws. *See* Policy, p. 9 (§ III.I). Endurance argues that the claims against BMB in the three underlying lawsuits are either based upon or arise out of the alleged securities fraud.

It is clear and undisputed that the plaintiffs in the three underlying lawsuits assert securities claims against BMB. In each case, however, the plaintiffs also assert common law negligence claims against BMB. Under clearly established legal authority, if one claim is potentially covered and not excluded, the duty to defend extends to all claims in the underlying litigation. *See, e.g., Zurich Amer. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

Endurance relies primarily on *Hiscox Dedicated Corporate Member Ltd. v. Partners Commercial Realty, L.P.*, 2009 WL 1794997 (S.D. Tex. June 23, 2009), in which Judge Gray Miller from this district held there was no duty to defend because

all claims in the underlying lawsuit were excluded by a similar Securities Exclusion. In *Hiscox*, the plaintiffs in the underlying lawsuit alleged that the insured was the developer of a real estate project and prepared an "Overview and Analysis" brochure for the project that the plaintiffs claimed was fraudulent. In that case, the only scheme to defraud that plaintiffs alleged involved the real estate project, and the allegations were that the insured induced the underlying plaintiffs to purchase securities in connection with the project only through the "Overview and Analysis" brochure. Judge Miller held that the negligent misrepresentation claim arose out of the alleged violation of securities laws because there was a "causal connection or relation" between the two claims. *See id.* at *8. Judge Miller found that the covered and the excluded claims could not be separated and, therefore, both claims were within the exclusion. *See id.*

In the *Troice*, *Canabal*, and *Rupert* Lawsuits, the plaintiffs assert various negligence claims against BMB. All of these claims involve, in part, the Letters BMB provided to SIB for use in soliciting deposits and other investments. These Letters provide an important basis for the securities fraud claims asserted against BMB by the plaintiffs in the underlying litigation. Specifically, those plaintiffs allege that BMB is liable for securities fraud because, by sending the "safety and soundness" Letters, BMB "crossed the line from being mere insurance brokers for the Stanford Financial

group," and essentially acted as Stanford Financial's sales agent. This theory falls within the securities claim exclusion. The plaintiffs in the underlying lawsuits allege alternatively, however, that BMB was "negligent when acting in [its] capacities as insurance agents, insurance brokers, risk managers and/or insurance consultants while providing their professional services by failing to adequately ensure that the language in the [Letters] properly described the existing insurance coverages." *See, e.g., Canabal* Complaint, ¶ 97. Unlike in the *Hiscox* case before Judge Miller, there is a significant potential in these underlying lawsuits that the factfinders could find that BMB did not cross the line to become more than insurance brokers and risk managers for Stanford Financial but, instead, merely acted negligently in providing those insurance and risk management services. In that situation, BMB would be liable for negligence but not for securities violations.

The Court finds the situation here more comparable to that presented in *Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487 (Tex. 2008). In that case, the pleadings in the underlying lawsuit included a claim that Nokia acted intentionally because it knew of the product's harmful effects and nonetheless sold the product to consumers and a separate claim that Nokia acted negligently because it should have known of the product's harmful effects. The insurer argued that the allegations of intentional conduct defeated the duty to defend. The Texas Supreme Court disagreed

and held that there was a duty to defend. The Texas Supreme Court stated that the "duty to defend is not negated by the inclusion of claims that are not covered; rather, it is triggered by the inclusion of claims that might be covered." *Id.* at 495-96.

The Court concludes that the alternatively asserted negligence-based claims are not within the Securities Exception and, as a result, Endurance owes BMB a duty to defend all claims in the underlying lawsuits.

### D. **Defendant Winter**

Endurance owes Winter a duty to defend if he meets the definition of "Insured Person" under the Policy. The Policy defines "Insured Person" as a natural person who was a "principal, managing member, officer, director, employee" of BMB, "but only while in the performance of Professional Services" on BMB's behalf. *See* Policy, p.5 (¶ O).

At all relevant times, Winter was an employee of BMB. In the underlying lawsuits, the plaintiffs allege that Winter, as BMB's employee, provided and signed the "safety and soundness" Letters on BMB letterhead. The plaintiffs allege that Winter, in his capacity as an employee of BMB, signed and provided the Letters to SIB without disclosing that he was a member of SIB's Board of Directors. In none of the three underlying lawsuits are there allegations against Winter in his capacity as a member of SIB's Board or in any capacity other than an employee of BMB. He is

a named defendant because he signed and provided to SIB the Letters regarding SIB's insurance coverage without disclosing his alleged conflict of interest as a member of SIB's Board.[3]

The claims against Winter are asserted against him as an employee of BMB and are based on "Professional Services" he provided in that capacity. As a result, Endurance owes Winter a duty to defend.

## III. CONCLUSION AND ORDER

Resolving all doubts regarding the duty to defend issue in favor of the Insured, the Court concludes that the three lawsuits contain factual allegations that -- taken as true and construed broadly -- potentially state a claim against BMB that is covered by the Policy. Winter meets the definition of an Insured under the Policy and, consequently, Endurance owes him a duty to defend. The indemnity issue is not yet justiciable because the underlying lawsuits remain pending. Accordingly, it is hereby

**ORDERED** that BMB's Motion for Summary Judgment [Doc. # 24] is **GRANTED**; Endurance's Motion for Summary Judgment [Doc. # 28] is **DENIED**;

---

[3] Endurance argues that the claims against Winter are not based on conduct he provided in the performance of Professional Services on BMB's behalf. As discussed above, the plaintiffs in the underlying lawsuits allege that BMB was providing services that satisfy the Policy's definition of "Professional Services." Because those plaintiffs allege that Winter was the employee who provided those services on BMB's behalf, the same reasoning leads to the conclusion that Winter was providing services that satisfy the "Professional Services" definition in the Policy.

and Winter's Motion [Doc. # 31] is **GRANTED**. The ruling is without prejudice as to the duty to indemnify. It is further

**ORDERED** that this case is **STAYED AND ADMINISTRATIVELY CLOSED** pending final resolution of the underlying lawsuits, at which time any party may move for reinstatement of this case on the Court's active docket.

SIGNED at Houston, Texas, this **4th** day of **January, 2010**.

_____
Nancy F. Atlas
United States District Judge